**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

|  |  |
|---|---|
| DARRELL BELL, : | |
| : | Civ. Action No. 18-2464(RMB) |
| Petitioner, : | |
| : | |
| v. : | **OPINION** |
| : | |
| WARDEN OF FAIRTON, F.C.I., : | |
| : | |
| Respondent. : | |

**BUMB**, District Judge

This matter comes before the Court upon Petitioner Darrell Bell's submission of a petition for a writ of habeas corpus under 28 U.S.C. § 2241 (Pet., ECF No. 1), challenging the Bureau of Prison's ("BOP") calculation of his sentence. Respondent filed an answer in opposition to the petition (Answer, ECF No. 6) and Petitioner filed a reply (Reply, ECF No. 7.) For the reasons discussed below, the habeas petition is denied.

I. BACKGROUND

Petitioner is a federal prisoner confined at the Federal Correctional Institution in Fairton, New Jersey. ("FCI-Fairton"). (Pet., ECF No. 1, ¶2.) Petitioner was arrested and charged with aggravated assault, terroristic threats with intent to terrorize another, simple assault, recklessly endangering another person and

resisting arrest in Philadelphia, PA on June 8, 2010, Case No. CP-51-CR-0009879-2010. (Declaration of Bryan Erickson[1] ("Erickson Decl."), Attach. D, ECF No. 6-2 at 6.) On July 21, 2010, Petitioner was indicted in the United States District Court, Eastern District of Pennsylvania ("District Court," Case No. 2:10-CR-000454-001, for possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g). (Id., Attach. A, ECF No. 6-2 at 6.) Shortly thereafter, the District Court issued a federal writ of habeas corpus *ad prosequendum* to borrow Petitioner from state custody for proceedings in his federal case. (Id., Attach. B, ECF No. 6-2 at 10-11.)

On June 16, 2011, Petitioner was sentenced in the Court of Common Pleas, Philadelphia County, Case No. CP-51-CR-0009879-2010, to a 58-month to 116-month term of imprisonment. (Id., Attach. D ECF Nos. 6-2 at 14-17; Attach. E at 6-2 at 30-32.) The state court ordered credit for time served from June 8, 2010 through June 16, 2011. (Id., Attach. D & E.) Subsequently, on December 6, 2011, Petitioner was sentenced in the District Court, Case Number 2:10-CR-000454-001, to a 37-month term of imprisonment. (Id., Attach. F, ECF No. 6-2 at 34-39.) The District Court ordered the federal sentence to run consecutively to the sentence imposed in state

---

[1] Bryan Erickson is a Correctional Programs Specialist for the Bureau of Prisons Designation and Sentence Computation Center ("DSCC.") (Erickson Decl., ECF No. 6-2 at 1, ¶1.)

court in Case Number CP-51-CR-0009879-2010. (Erickson Decl., Attach. F, ECF No. 6-2 at 34-39.) On December 21, 2011, the federal authorities returned Petitioner to Pennsylvania authorities and placed a detainer on Petitioner for his federal criminal conviction. (Erickson Decl., Attach. C, ECF No. 6-2 at 10; Ex. G, ECF No. 6-2 at 41.)

On March 30, 2012, while Petitioner was serving his Pennsylvania sentence in Case No. CP-51-CR-0009879-2010, the Commonwealth of Pennsylvania revoked his probation in another Pennsylvania criminal case, Case No. CP-51-CR-0904831-2001. (Id., Attach. E, ECF No. 6-2 at 30.) The Court of Common Pleas sentenced Petitioner in Case No. CP-51-CR-0904831-2001 to a one-to-two-year term of imprisonment, to run consecutively with Case No. CP-51-CR-0009879-2010. (Id. at 30-32.)

Petitioner finished serving his Pennsylvania sentences on July 14, 2016, and despite the federal detainer, state authorities released him into the community. (Id., Attach. H, ECF No. 6-2 at 43.) On February 13, 2017, the District Court issued an Order and Arrest Warrant in Case No. 2:10-CR-000454-001 for Petitioner to serve his federal sentence. (Id., Attach. I, ECF No. 6-2 at 45-46.) Petitioner was arrested and detained by federal authorities on February 14, 2017 and designated to FCI Fairton on March 13, 2017. (Id., Attach. H, ECF No. 6-2 at 46; Attach. J, ECF No. 6-2 at 49.)

The BOP prepared Petitioner's sentence computation. (Id., Attach. J, ECF No. 6-2 at 48-50.) The BOP commenced Petitioner's 37-month federal sentence on February 14, 2017, the day he was apprehended by federal authorities. (Erickson Decl., Attach. J, ECF No. 6-2 at 48-50.)[2] Petitioner was not given any prior custody credit against his federal sentence because his pretrial custody from June 8, 2010 through June 16, 2011 was applied to his Pennsylvania sentence in Case No. 51-CR-0009879-2010.[3] (Id. at 50.) Petitioner sought credit against his federal sentence for his time at liberty, and he exhausted his administrative remedies with the BOP for this claim. (Declaration of Ondreya Barksdale[4] ("Barksdale Decl."), ECF No. 6-1 at 1-14.)

II. DISCUSSION

    A.    The Parties' Arguments

---

[2] The BOP properly commenced Petitioner's sentence when he was taken into federal custody on February 14, 2017. See 18 U.S.C. § 3585(a) (federal sentence commences "on the date the defendant is received in custody … at[] the official detention facility at which the sentence is to be served); Davis v. Sniezek, 403 F. App'x 738, 741 (3d Cir. 2010) (per curiam) (state did not relinquish jurisdiction over prisoner by release into temporary federal custody; state relinquished jurisdiction when state sentence expired).

[3] See 18 U.S.C. § 3585(b) (a defendant is entitled to prior custody credit "that has not been credited against another sentence.")

[4] Ondreya Barksdale is a Paralegal Specialist for the Federal Bureau of Prisons (BOP), Northeast Regional Office (NERO) who has access to most records maintained in the ordinary course of business at BOP NERO. (Barksdale Decl., ECF No. 6-1 at 1, ¶1.)

Petitioner stated his habeas claim as follows:

> Pursuant to White v. Perlman, 42 F.3d 788, 789 (10th Cir. 1930) and its progenies, I am to be granted credit for the 7 months I was at liberty. I was released from state custody on July 14 of 2016. I was on state parole supervision until February 14, 2017, when federal marshals arrested me for my federal sentence. My release from state custody was not a result of any contributing fault on my behalf.

(Pet., ECF No. 1, ¶13.)

Respondent asserts that under Third Circuit precedent, <u>Vega v. United States</u>, 493 F.3d 310 (3d Cir. 2007), Petitioner is not entitled to credit for his time at liberty because (1) he was not in custody during the time he was at liberty; and (2) federal authorities were not negligent. (Answer, ECF No. 6 at 7.) Respondent asserts federal authorities were not negligent because they properly (1) placed the federal criminal Judgment against Petitioner as a detainer; (2) prepared a U.S. Marshals Detainer on December 14, 2011 and submitted it to the proper Pennsylvania authorities; and (3) obtained a receipt of the detainer by Pennsylvania on December 11, 2011. (Erickson Decl., ECF No. 6-2.) Respondents contend it is irrelevant that state authorities were negligent in releasing Petitioner, and as a matter of law his federal sentence did not commence until he was apprehended on February 14, 2017. (Answer, ECF No. 6 at 10.)

In reply, Petitioner suggests that federal authorities were partially at fault for his early release. (Id. at 4.) He explains:

> Petitioner asks that this Court take note of the December 14, 2011 detainer. This detainer was given to a Ms. Cookie Burnstine, an employee of Curran Fromhold County (C.F.C.F) Jail. It must be remembered that on June 16, 2011, Petitioner received a sentence from the Pennsylvania Court of Common Pleas, which even the Respondent acknowledges. Petitioner asserts this is where Respondent must take partial responsibility for their error.
>
> Here is why: On December 6, 2011, Petitioner was sentenced in the U.S. District Court, and then on December 21, 2011, the imprisoning sovereign (federal) returned Petitioner to Pennsylvania authorities, having full knowledge that Petitioner was sentenced to a state, not county, sentence on June 16, 2011, but nevertheless, they allowed a county facility (C.F.C.F.) that was and could have been, acting as an agent for the imprisoning sovereign to notify them of Petitioner's release, but never notified or sent the December 14, 2011 Detainer to the proper state authorities at any of the state correctional institutes in which the imprisoning sovereign knew because of the above December 16, 2011 sentence, that was to be served in a state facility, not county.

(Reply, ECF No. 7 at 4-5.)

B. <u>Legal Standard</u>

Third Circuit precedent governs cases in the District of New Jersey. In <u>Vega v. United States</u>, 493 F.3d 310 (3d Cir. 2007), Vega sought credit against his federal sentence for time he spent at liberty after he was erroneously released by New York prison officials. Id. at 313. Vega was in custody of New York state

6

authorities when he pled guilty to federal charges and was sentenced to 96-months imprisonment. 493 F.3d at 313. When Vega was returned to state authorities on December 10, 2001 for completion of his state sentence, the U.S. Marshals Service lodged a federal detainer, advising the state warden to notify the Marshals Service when Vega completed his state sentence. Id. The Marshals Service did not confirm receipt of the federal detainer and did not inquire of the State whether it was received and, if so, whether it would be honored. Id.

The Third Circuit acknowledged the "doctrine" of credit for time at liberty originating from White v. Pearlman, 42 F.2d 788 (10th Cir. 1930). Id. at 314-15. Under the common law, "'[t]he government is not permitted to delay the expiration of the sentence either by postponing the commencement of the sentence or by releasing the prisoner for a time and then reimprisoning him.'" Id. at 317 (quoting Dunne v. Keohane, [14] F.3d 335, 336 (7th Cir. 1994)). Based on the common law, the Third Circuit developed the following test:

> in order for a prisoner to receive credit for time he was erroneously at liberty, the prisoner's habeas petition must contain facts that demonstrate that he has been released despite having unserved time remaining on his sentence. Once he has done this, the burden shifts to the government to prove either (1) that there was no negligence on the part of the imprisoning sovereign, or (2) that the prisoner obtained or retained his liberty through his own efforts.

7

493 F.3d at 319.

The court explained,

> [a]s with any habeas petition, this test puts the initial burden on the prisoner to show his right to relief, which he does by indicating that his right to serve his sentence continuously has been denied him. *See* 28 U.S.C. § 2242. The test then requires the court to grant the petition unless the respondent government can "show cause why the writ should not be granted." 28 U.S.C. § 2243. The burden shifting scheme also places the burden on the party that has greater access to documents tending to prove a lack of governmental negligence or prisoner fault.

493 F.3d at 319-20. "[H]abeas relief is inappropriate where the government's hands are entirely clean. However, even simple negligence … can defeat a claim of clean hands." Id. at 320. Only negligence by the imprisoning sovereign entitles the petitioner to credit for time at liberty. Id.

The Third Circuit test requires balancing three interests: (1) the prisoner's right to serve a continuous sentence in a timely manner; (2) the need to limit arbitrary use of government power; and (3) the government and societal interest in having a prisoner pay the debt he or she owes society. Evans v. Sec'y Pennsylvania Dep't of Corr., 645 F.3d 650, 661, n.19 (3d Cir. 2011) (quoting Vega, 493 F.3d at 318). Thus, a

> prisoner is to receive credit for the time he was at liberty if he can bring forth facts indicating that he was released despite having unserved time remaining. The government may

> then respond to the petition by showing that, either, the imprisoning sovereign was not negligent, or vicariously negligent, or that the prisoner, in any way, affirmatively effectuated his release or prevented his re-apprehension.

Evans v. Sec'y Pennsylvania Dep't of Corr., 645 F.3d 650, 661, n.19 (3d Cir. 2011) (quoting Vega, 493 F.3d at 323).

In developing this test, the Third Circuit was persuaded by the reasoning of the dissent in Clark v. Floyd, 80 F.3d 371, 374 (9th Cir. 1996) and the Fifth Circuit decision in Leggett v. Fleming, 380 F.3d 232 (5th Cir. 2004). Vega, 493 F.3d at 320-21. In the Clark dissent, Judge Fernandez argued that Clark did not deserve credit because the federal authorities had not made a mistake. Id. at 321 (citing Clark at 375 (Fernandez, J. dissenting)).

The facts in Clark were as follows. Clark was on federal probation, which was revoked when Clark was convicted of a state offense in Montana, and the federal court sentenced Clark to a new prison term to run consecutively with his previously imposed federal sentences. Clark, 80 F.3d at 372-73. The federal Judgment/Commitment Order committed Clark to the custody of the U.S. Attorney General or his representative for five years; however, the U.S. Marshal returned Clark to Montana for service of his state sentence. Id. at 373. The U.S. Marshal sent the Montana State Prisons Records Office a detainer, directing it to notify

9

the Marshal when Clark was released from state prison so he could be taken into federal custody to serve his federal sentence. Clark, 80 F.3d at 373. The state prison warden acknowledged receipt of the detainer and agreed to comply with it. Id. When Clark was released by Montana prison authorities on parole, they failed to inform the U.S. Marshal. Id. Clark was arrested by federal authorities nearly three years later, and service of his federal sentences began on the day of his arrest. Id.

The Third Circuit was also persuaded by the reasoning of the Fifth Circuit in Leggett. Leggett was in a Midland County, Texas jail for a probation violation when he was indicted in federal court for being a felon in possession of a firearm. Leggett, 380 F.3d at 233. After standing trial in federal court, Leggett pleaded guilty and was sentenced to 70-months federal imprisonment and promptly returned to Midland County Jail. Id. The Marshals Service lodged a detainer with the Midland County Sheriff's Department, asking for notification when Leggett finished serving his state sentence so he could begin service of his federal sentence. Id. The Midland County Sheriff's Office acknowledged receipt of the detainer. Id.

Several weeks later, when the State of Texas revoked Leggett's probation and transferred him to the Texas Department of Criminal Justice, the Midland County Sheriff's Department failed to transfer the detainer with Leggett. Id. When Leggett was later

10

released from state prison, the U.S. Marshals Service was not notified and Leggett did not notify any federal authority that he was released without having served his federal sentence. Leggett, 380 F.3d at 233.

The Fifth Circuit stated, ""the errors of state officials should not impact a prisoner's service of his federal sentence. … Where there is no evidence that the governmental authority seeking to enforce the prisoner's sentence has erred, a prisoner should not be allowed to avoid service of that sentence." Id. at 235-36. In reliance on Leggett and the Clark dissent, the Third Circuit stated "[w]ere we to allow a prisoner credit for time spent at liberty where no fault lies with the imprisoning authority, the goal of fairness to the defendant would be served at the expense of society's expectation that a prisoner will serve the time he owes." Vega, 493 F.3d at 321. A reviewing court must determine whether the imprisoning sovereign was partially at fault, not "which sovereign made the more serious error." Id. at 322.

The Third Circuit further held,

> The government cannot meet its burden … merely by showing that a prisoner did not take affirmative steps to effectuate his own sentence. If a prisoner suspects that he may have another sentence to serve and does nothing to notify authorities, he may still receive credit against his sentence so long as his conduct has not violated his parole or thwarted authorities in any other manner.

Id.

In applying this rule to Vega, the Third Circuit stated,

> factual inquiries remain regarding the degree of fault, if any, of the United States. Therefore, we will remand the case so that the District Court can consider in the first instance whether the United States was negligent, taking into consideration the detainer and the Government's admission that it never received notice that the detainer had been received. In addition, this case presents unique circumstances that involve a very close working relationship between federal and state authorities. Therefore, on remand the District Court should consider in the first instance the legal issue of whether, under these particular facts, the State of New York was acting as an agent of the federal government.

493 F.3d at 322.

C. Analysis

Petitioner argues federal authorities were at fault for serving the federal detainer on the county facility before he was designated to a state prison for service of his sentence, and for not following up with the state facility after Petitioner was transferred. Petitioner also suggests the county facility was acting as an agent for federal authorities for the purpose of notifying them of Petitioner's release or transfer to another facility, making federal authorities responsible for its agent's error.

Petitioner met his initial burden under the Vega test by establishing that he was released by state authorities despite having unserved time remaining on his federal sentence. Respondent

12

countered with evidence that the U.S. Marshals Service served a federal detainer on the county facility where Petitioner was detained at the time of his federal sentencing, and that the county facility acknowledged receipt of the detainer. (Erickson Decl., Attach. G, ECF No. 6-2 at 41.)

The written instructions on the federal detainer addressed the possibility that Petitioner might be moved from one detention facility to another; "[i]f the subject is transferred from your custody to another detention facility, we request that you forward our Detainer to said facility at the time of transfer and advise this office as soon as possible." The county facility agreed by acknowledging receipt of the detainer. (Erickson Decl., Attach. G, ECF No. 6-2 at 41.) Therefore, this case is distinguishable from Vega where the federal authorities never confirmed the state's receipt of the detainer nor did they follow up on whether the state would comply with the request in the detainer.

The facts here are nearly identical to those in Leggett, where the County Sheriff's Department acknowledged the federal detainer but failed to transfer the detainer with the petitioner to a state prison. The Third Circuit relied on Leggett in determining that a prisoner should not receive credit for time spent at liberty where no fault lies with the imprisoning authority. Thus, Respondent has established that the federal authorities were not at fault for Petitioner's release without serving his federal sentence.

III. CONCLUSION

For the reasons stated above, the Court will deny Petitioner's petition for a writ of habeas corpus under 28 U.S.C. § 2241.

An appropriate Order follows.

Dated: May 10, 2019

                                        s/Renée Marie Bumb
                                        **RENÉE MARIE BUMB**
                                        **United States District Judge**